Case number 23-3423, Northern District of Iowa, Larenzo Burnett v. United States. All right, Ms. Donnells, we'll hear from you. Good morning, your honors. Thank you. May it please the court. Mr. Burnett wanted to appeal. He had every reason to appeal. He expected his trial counsel to file an appeal. He expected his trial counsel to give him adequate and correct advice about the appeal. In this case, the district court clearly erred in discrediting his testimony and crediting that of his trial counsel, Mr. Christopher Nathan. Mr. Burnett acknowledges that he does face a difficult standard of review here. Probably the most difficult standard of review he can face on appeal. This court must determine whether the Honorable C.J. Williams' credibility determination It's even harder than usual because of that credibility finding. Absolutely, Judge. Give me your best shot at that. That's a big rock. Absolutely, Judge. I think what differentiates Mr. Burnett's case from similar petitioners is how strong the motive to appeal was in this case. And the fact that portions of his testimony were actually corroborated by Mr. Nathan. And lastly, that Mr. Nathan's testimony about why there was no appeal and about what he advised Mr. Burnett about the Frazier case does not reflect the vigorous and conscientious advocacy that this court expects. Starting with Mr. Burnett's motive to appeal. It's very clear that the Frazier case would have taken years off of his sentence. It's very clear that this was something that he was monitoring closely through his attorney, Mr. Nathan. Mr. Burnett and Mr. Nathan both testified that even the day that he signed his sentencing agreement, Mr. Burnett asked, has the Frazier appeal been decided yet? The Frazier case would have knocked Mr. Burnett's guidelines base offense level down by six levels from 20 to 14. Even if Mr. Burnett lost on every other issue that he challenged in the guidelines calculation and lost acceptance of responsibility as the government was advocating, his guidelines would have gone from the top of the statutory sentencing range, above the top of the statutory sentencing range actually, but at the statutory sentencing range by operation of law, to 84 to 105 months. This was an important issue to Mr. Burnett. He was facing charges in other cases, in other jurisdictions. The length of his sentence was the most important thing to him as he defended himself in the criminal matter below. Mr. Burnett also had nothing to lose by appealing his sentence. His situation could not have gone worse. There was not an appeal waiver in the sentencing agreement, and even if Frazier had come out the other way, his appeal would not have made his sentence worse. Now I mentioned that part. I suppose nothing to lose assumes no vindictive resentencing. That's true, Your Honor. That's a fair assumption, but there was going to be a resentencing. Absolutely, Your Honor. And variance to at least restore the prior sentence is an option. That's certainly a possibility, but I do think in this case, and Judge Williams did comment on this in his order, I don't think it's particularly convincing because Judge Williams essentially offered to trade one appeal issue for another. It's certainly not controlling or dispositive. Absolutely. I do think Judge Williams stated that he gave a downward variance as required under the sentencing agreement because the sentencing agreement reflected an acceptance of responsibility or something to that effect. But the downward variance under the sentencing agreement was one that was going to be mandatory. It was his credit for time served on an undischarged state sentence under the guidelines. So I don't think Judge Williams' statement that he would give the same or a higher sentence is entitled to any weight, even under the normal circumstances. Now these IAC requests to appeal cases are not uncommon, probably around the country. Have you got a case, say, from another circuit or even a district court where this kind of credibility determination, I guess the appellate court, was reversed, specifically in this kind of case? Because these kinds of credibility conflicts are not uncommon in the few cases I've had. Absolutely, Your Honor. Roe v. Flores-Ortega, which was the case that made it to the United States Supreme Court, 528 U.S. 470 in 2000. Is that in your brief? I believe it was, yes. Isn't that just the one saying that if the defendant requests the notice, the lawyer must file it? Absolutely, Your Honor. And on remand, the Ninth Circuit did do the analysis that the Supreme Court instructed. And I don't believe I cited the case on remand in my brief, Your Honors. I can accept responsibility. Remand circuit site? The remand is 39 Fed Appendix 604 out of the Ninth Circuit. And I can take responsibility for not citing that in my brief. But how is it relevant? On remand, to answer Judge Loken's question, Mr. Flores-Ortega had testified that he asked for an appeal and was interested in an appeal. And his attorney did not testify, like Mr. Nathan did, that no, there was no appeal request. I wouldn't risk my career by failing to file an appeal. So on the remand, the Ninth Circuit did find in favor of the petitioner. The dissent in that case was also interesting because it looked at the course of proceedings to determine whether or not Mr. Flores-Ortega was credible. The dissent would have found him not credible, noting that there was clear evidence of guilt. He quickly pled guilty and got a very short sentence as a result. And the dissent noted that a conditional plea or something left to appeal, having a strong appeal issue like Mr. Burnett did, would be strong evidence supporting the credibility of the petitioner. But you're saying the lawyer in that case did not contradict the client? It's different than our case here in that respect? I thought that's what you said, the lawyer did not testify. In that case, the lawyer did testify. She had no recollection of what she had talked about with Mr. Flores, but she testified that her normal practice was to bring appeal papers to sentencing proceedings. So she didn't contradict him, but she didn't assist him either with her testimony. Another thing that distinguishes Mr. Burnett's case is the timing of the communications and when Mr. Nathan learned about the Frazier case. Mr. Burnett was sentenced on September 7th, or September 8th, excuse me. On September 9th, the Frazier case was decided, and Mr. Nathan writes Mr. Burnett this form letter advising that there's no right to appeal. It doesn't mention the Frazier case. It's probably reasonable for Mr. Nathan not to know about the Frazier case the day it's decided. But later they talk on the phone, and Mr. Nathan's testimony is that the next business day, he surely reviewed the Frazier case, and he remembered thinking, oh my God, Mr. Burnett's going to be so upset about this. This is harmful to him. This is something that he cared about and was following closely. But the undisputed testimony was that he never shared that information with Mr. Burnett. He didn't give Mr. Burnett the information that he needed to exercise his appeal rights, leaving Mr. Burnett to not find out about the Frazier case until four months later. And that's another thing that supports Mr. Burnett's version of events, that there was no interest in filing an appeal, and despite his request, it wasn't filed. Counsel, help me to recall that in the hearing where the attorney testified and Mr. Burnett testified, I think, was there any reference made to this September the 9th letter from Mr. Nathan to Mr. Burnett that has in bold that I will not file a notice of appeal unless you give me specific written instructions to do so? Mr. Nathan was asked about that, and he did acknowledge that even if Mr. Burnett had informed him orally or even if Mr. Burnett's girlfriend or family member had informed him, he would have filed the appeal without written notice. But isn't that significant? I mean, is there any dispute about whether this letter was received by Mr. Burnett? Mr. Burnett testified that he did receive it and that he called Mr. Nathan irritated about it because to his version of the events, he had asked Mr. Nathan to appeal, so he was upset that he was being asked to waive his appeal rights. And did he give an explanation as to why he didn't send written instructions? He didn't think he needed to, per his testimony, because they were on the phone frequently during this time period. Thank you, Your Honors. I reserve my remaining time for rebuttal. Thank you for your argument. Mr. Chatham, we'll hear from you. Thank you. Thank you. May it please the Court? Counsel. I believe the Court has locked in on the key issue here, which is that this case comes down to one particular fact. It's did Mr. Burnett instruct, clearly instruct Mr. Nathan to file a notice of appeal? That fact was the subject of testimony at the hearing. Both Mr. Nathan and both Mr. Burnett testified. The district court judge heard the testimony of both of them, examined their credibility, looked at the other evidence that existed to support each of their testimony, and ultimately concluded that Mr. Nathan was more credible than Mr. Burnett. That is essentially the end of the issue. Mr. Burnett certainly came in after the fact, months after the fact, and said he wanted to appeal this, but this was a situation where he entered a sentencing agreement. You used the word clearly instruct. I thought from some of these cases it's just if he said, yes, I want you to appeal and that's credible, then it's ineffective assistance not to. That would be a clear instruction. Flores-Otega talks about giving express instructions and then disregarding those instructions. And so if a client. So if he's credible, he clearly instructed it three or four times? Yes. If Mr. Burnett's testimony was. Including before sentencing? I don't know about the statement before sentencing, if that would necessarily qualify. Before sentencing and after sentencing he told Nathan, I want to appeal this if I lose out. He had all these objections pending. Correct. I'm not entirely sure if the statement before sentencing was after the sentencing agreement. That's the least important. Certainly. So if those statements are to be believed, then yes, that would be a situation where the court would need to reverse. But I think as Judge Loken, as you keyed in on it, I'm not aware of any case in which an attorney has testified, no, they never told me to appeal. And a defendant who is unsupported in the way that this particular defendant is unsupported, there's no documentary evidence or other witnesses he called to testify that, yes, we were talking. He told me, he told his attorney to file an appeal, anything like that. It's simply Mr. Burnett's testimony after the fact. My question was, with this kind of fact dispute, he said, she said, between the defendant and attorney and the district court finds the attorney credible and the defendant not, has that ever been reversed on appeal? I'm not aware of any case that would do that. And I believe counsel has acknowledged that even for Ortega on the remand, we're not talking about the same situation. At best, the attorney in that case was equivocal or couldn't really recall what would have been said. Well, yeah, counsel points out that a clearly erroneous credibility determination is reversible, at least in theory. Yes, that would be the standard. It's not beyond the pale, so to speak. In particular circumstances, that would be correct. What would have been the rational reason not to appeal in this case? In this situation, Mr. Nathan testified that this wouldn't have been a simple situation of forfeiture. It was a waiver. They expressly waived. They entered into a sentencing agreement. So they waived the Frazier issue in the agreement based on their projections of likelihood and so forth?  And that's important here because it's not a simple situation where, hey, this was the only issue coming up. Yeah, we'll let it go and just hope to get this particular sentence. There were many live issues in this particular case. So there was a tradeoff. We'll waive the Frazier issue and maybe we'll get some other benefit in the agreement. Is that what you're saying? Correct. And here the government had given notice of a potential upward variance because it can't be lost here that this defendant shot and killed the man. And ultimately that was not the subject of any additional upward departures or variances. Essentially, as counsel noted, the range would have been 84 to 105 if the Frazier issue had come down before. But say that was all there and then we're litigating all the other issues. At that point, the government's arguing still to the max because we haven't really accounted for the fact that someone was shot and killed with this firearm. And so there still would have been a lot of other issues that would have been live at the time. And he might have not gotten any benefit whatsoever by winning on the Frazier issue because the government still was going to be able to argue all this other stuff. But instead, the parties came into sentencing with an agreement where they started at the statutory max, which is probably where the government was going to be arguing anyway because the guidelines were way above that in their estimation, and did the downward variance for credit, which is essentially where he was. And I understand the – What do you mean for credit? Credit for time served on the related case. That's ultimately where he ended up down to 90. 600 days, wasn't it? Something like that. Yeah, 624. Yes. Now, did both of them agree? At least Nathan, if I read the brief, if I recall, testified that they discussed Frazier as a pending case before the plea agreement was signed. The sentencing agreement, yes. Yeah, the sentencing agreement. And did Burnett agree with that, that they had discussed it before he agreed to the sentencing agreement? I believe so, yes. I thought it was both. They were in agreement on all of those aspects of it. Essentially, the part that they depart from one another is that Mr. Nathan said he never did. So he knew Frazier was a possibility. Absolutely. And he could have hung in there, so to speak, but he took the deal. Correct. All right. Counsel, isn't there a factual error in the court's order? I'm referring to page 10 where the court is recounting testimony of the attorney. And the court says that Mr. Nathan testified that he did not discuss the issue of an appeal with Petitioner immediately after the sentencing hearing, but did discuss it with him sometime over the phone within the 14-day period following the sentencing hearing. And then later the attorney, the court says that the attorney testified that Mr. Burnett did not request that Mr. Nathan file a notice of appeal when actually the attorney testified that he did not recall whether Burnett spoke to him on the phone during the time period, that he can't recall the content of any phone calls he may have had with Burnett. I believe that's correct. I think you're right that the statement that they talked about the appeal during the 14-day period, Mr. Nathan could not recall that specifically. So what impact does this error by the district court, what would that have here when we're talking about a credibility finding if the court misunderstood the attorney's testimony? I don't believe it has any impact ultimately because Mr. Nathan did not testify that he told me that he told me to appeal. They did talk about other issues during those phone calls, but Mr. Nathan was very clear that he never once instructed me to file a case. I'm not sure he said that. He said he would be shocked. Didn't he say he would be shocked? I would be shocked if he told me to appeal and I didn't do it. I believe that's the testimony, yes, that he would be shocked if he, I think, ignored his constitutional, his assertion of a constitutional right. Yeah, but that's different than testimony that he did not give me those instructions. And instead he says I don't remember. I don't think he ever said I don't remember. I mean, he said I would be shocked. I would be shocked if he did, which I think the fair implication of that. I can't recall the content. That's what he said. I believe that response. He did not recall whether Burnett spoke to him on the phone. That response was in relation to, the testimony was that Mr. Burnett called a lot. He called about a number of different issues. He had some other things that he was trying to do to decrease the sentence, some other issues that he was calling him about. So I think that's the context in which Mr. Nathan was making that particular testimony, is that I don't recall specifically what we were talking about during each and every one of those phone calls, other than the idea that it was about his wanting to reduce his sentence. But I believe the district court's factual finding here that Mr. Burnett did not tell Mr. Nathan to file the appeal is supported by the record here. It's certainly not contradicted by any other evidence in the case. Certainly Mr. Nathan agreed that those calls happened. Mr. Burnett and Mr. Nathan were in accord that they did speak during those few weeks. But Mr. Nathan, I think a fair appraisal of his testimony was that this is not something that was said. And Mr. Nathan's testimony about it was essentially that it's no skin off my back if he says he wants to appeal. I don't even handle the appeal. Right? It would have taken me just a few seconds. I mean, I don't want to belabor it, but if the petitioner says, I remember I told him I want to appeal. The attorney says I don't recall. I believe, well, he says I don't recall, but I'd be shocked if he did because in the context of that, this is an assertion of a constitutional right, and we're talking about a long-time, very well-respected assistant federal public defender, vigorous advocate. So he would be shocked if he did that because this is what he does. And it's really not even, it's what their office does. It's not like he gets paid less or anything, whether he's handling this appeal or filing the notice of appeal in this case. So ultimately. In slight defense of the district court, I think the lawyer did testify at no point during any conversation within those two weeks, the two weeks after the sentencing. Assuming that conversations occurred, did he ask me to appeal? So he's saying I don't recall whether I talked to him. That's not how I read it. I don't recall whether I talked to him within the two weeks, but if I did, he didn't ask me to appeal in those. That's a little more, I think, than saying I would be shocked because he's saying, he seems to be saying he didn't ask me to appeal. I'm just not recalling the timing of the different phone calls. I would agree with that assessment. Then he goes on with the, if he had asked you to appeal, what would you have done? And again, I will just say here, this is a situation where we have to find clear error in the district court's decision. And there, other than Mr. Burnett's testimony and the fact that Mr. Nathan agreed that they had some sort of phone calls, with the caveats that Judge Collinson has noted, there's no evidence here indicating that the district court, upon which this court could find that the district court clearly erred in finding Mr. Nathan credible. Particularly given the nature of this particular issue and the fact that, in his mind, even as he sat there, this was a waived issue and was not something that was going to help him on appeal. Not to mention, even if it helped him on appeal, as the district court noted, he probably would end up with the same sentence anyway. Anything further? I have no other questions. All right. Thank you for your argument. Thank you. Ms. Donalds, any rebuttal? We'll hear from you. Thank you, Your Honors. You can move that microphone down a little bit. There you go. A little bit shorter than Mr. Chatham. It is a difficult standard of review. But it's not a toothless standard of review. It's not an impossible standard of review. And every reason that the district court and that the government criticizes Mr. Burnett's credibility in this case, unfortunately applies to every single 2255 petitioner. Every defense counsel is an officer of the court who would never lie to the court. Every petitioner is a convicted criminal who comes in with the weight of that conviction hanging over their head and affecting their credibility. Every petitioner has something to gain if they do gain the opportunity for a resentencing hearing and a second bite at the apple on appeal. Those are universal truths in these cases, but that doesn't mean that every single petitioner is a liar. Mr. Burnett came forward with specific, credible testimony about when, how, and why he wanted to appeal this case. Some of it was corroborated by Mr. Nathan. I'm consistent with Mr. Nathan's testimony that he did not advise Mr. Burnett that the Frazier case had come down in his favor during that two-week period. That is something that a defense attorney who was vigorously advocating and conscientiously advocating on behalf of their client would have done during that two-week period. But Mr. Nathan's testimony was that he didn't even talk to the appeal officer in the public defender's office about this issue until after the appeal deadline had passed. Your Honor has asked Mr. Chatham. I apologize. After the deadline had passed because the pro se notice was filed after the deadline? I think he does say after the pro se notice went in he talked to Heather Quick about it. I believe Mr. Nathan's testimony involves two potential conversations with Ms. Quick, but it could have just been one. It's a little bit unclear to me. But on page 108 of the appendix, he testified that sometime after the notice of appeal deadline had expired, he definitely walked into Ms. Quick's office. Having already discussed the case with Ms. Quick, she looked into it briefly. This happened... Just on the sequence, was the pro se notice untimely? Yes. The pro se notice was about four months after the sentencing hearing. And what happened? Did our court dismiss it as untimely? Yes, Your Honor. Okay, well that answers my question then, because he says he went and talked to her after. But that would have been four months later. Your Honor has also asked Mr. Chatham if it matters that Mr. Nathan's testimony was equivocal on some issues. And I think what stands out to me is that he did not discuss proactively... He testified that he did not proactively discuss the appeal with Mr. Burnett. That he didn't think there were any hot issues for appeal, so he wrote him this letter and that was it. But this is in contrast to his testimony that he read the Frazier case and immediately thought, Oh no, Mr. Burnett's going to be so upset about this, and didn't talk to him about it. It's a tough standard of review. Mr. Burnett comes into the court with a lot of baggage that should make a court question his credibility. But it's not an impossible standard of review. Mr. Burnett showed that he asked for an appeal. In this case, his 2255 petition should be granted so that he can be resentenced and have the appeal that he asked for. Thank you, Your Honors. Very well, thank you for your argument and thank you for accepting the appointment under the Criminal Justice Act. Thank you to both counsel. The case is submitted and the court will file a decision in due course.